1

2    **Entered on Docket**
     **June 24, 2008**

                                        _____
3                                       **Hon. Bruce A. Markell**
                                        **United States Bankruptcy Judge**

4

5                    UNITED STATES BANKRUPTCY COURT

6                          DISTRICT OF NEVADA

7                              * * * * * *

8    In re:                          )    BK-S-07-16504-BAM
                                     )    Chapter 7
9    JOHN L. SMITH,                  )
                                     )
10              Debtor.              )    Adv. Proceeding No.: 08-1012-BAM
                                     )
11   _____ )
                                     )
     SHELDON G. ADELSON,             )    Date:       April 22, 2008
12                                   )    Time:       1:30 p.m.
                Plaintiff,           )    Courtroom:  3
13                                   )
     vs.                             )
14                                   )
     JOHN L. SMITH,                  )
15                                   )
                Defendant.           )
16   _____ )

17   **OPINION ON MOTIONS TO STAY PROCEEDING AND FOR RELIEF FROM STAY**

18                        **I. Facts and Introduction**

19          Plaintiff Sheldon Adelson is a philanthropic businessman with casino interests across the globe.

20   Defendant John L. Smith is a newspaper columnist in Las Vegas.  Smith wrote a book about Las Vegas

21   that Adelson believes libeled him.  Adelson brought suit in California state court seeking damages for

22   that alleged libel.  Shortly before the California case was to go to trial before a jury, on October 10,

23   2007, Smith filed a chapter 7 case in Nevada, partly in response to Adelson's libel lawsuit, but also

24   partly because of significant medical expenses incurred by a family member.

25

26

1    Within five days of the January 14, 2008 deadline to do so, Adelson filed an adversary
2 proceeding in this court.  That proceeding requested this court to determine and to liquidate Smith's
3 liability to Adelson because of Smith's alleged libel, and find that any such debt was nondischargeable.
4 Adelson's complaint did not request a jury trial on any portion of his claims.  Almost six weeks later,
5 on February 8, 2008, Adelson filed a proof of claim with respect to the damages alleged in his adversary
6 proceeding.  On March 25, 2008, the parties attended an initial status conference on the dischargeability
7 adversary proceeding, at which Adelson participated and during which the court scheduled a five-day
8 libel and nondischargeability trial for December 2008.

9    On March 21, 2008, shortly before the status conference and almost three months after the
10 adversary proceeding was filed, Adelson moved to stay the adversary proceeding, and he concurrently
11 moved for relief from stay to allow the California state case to go to trial.  In addition, Adelson alleged
12 that he was entitled to a jury trial on his libel claims, and that because of that right, the matter would
13 be more efficiently tried in California state court.  The evidence for the speedy resolution, however, was
14 not definitive or persuasive; a lawyer for Adelson submitted a declaration about a telephone
15 conversation he had with the California court's clerk.  That declaration essentially stated that if relief
16 from stay were granted, the earliest the California case would go to trial was January 2009.  The
17 declaration also stated that given the age of the case "the judge may set the case to begin trial according
18 to his own calendar and discretion."[1]

19    At the hearing on the motion for relief from stay and to stay the adversary proceeding, this court,
20 on its own motion, requested post-hearing briefing on whether Section 157(b)(5) of title 28 requires this
21 matter to be heard by an Article III United States District Judge.  The parties submitted briefs in
22 response to this point.

23

24 _____

25        [1]This court gives this statement and the declaration that it contains  little weight and takes the
26 declaration to mean that no trial could be started in California until after the scheduled date for the
commencement of the nondischargeability action.

2

1   After considering the briefs and evidence, this court denies Adelson's motions and retains
2   jurisdiction of this adversary proceeding.  As to the motion to lift the stay, Adelson has not met his
3   burden of showing cause. The same infirmity dooms his motion to stay the adversary proceeding.  As
4   to whether this court or the district court should hear all future matters, this court holds that Adelson's
5   libel claims are "personal injury tort claims" within the meaning of Section 157(b)(5) of title 28, but
6   that the provisions of that section are not jurisdictional in the sense that they deprive this court of the
7   power to hear the matter.

8   Initially, then, this matter is properly before this court. Although Adelson might at some time
9   have been able to rely on Section 157(b)(5) to effect a transfer to the district court, he has waived the
10  benefit of that statute by the language of his complaint, his filing of a proof of claim, and his conduct
11  in these proceedings.  As a result, this case will proceed to trial in December 2008 as originally
12  scheduled, and Adelson may not continue to prosecute the California action.

13                      **II.  Jurisdiction and 28 U.S.C. § 157(b)(5)**

14  The context in which Section 157(b)(5) is found requires some explanation of bankruptcy court
15  jurisdiction.  Bankruptcy courts are legislative courts, created by Congress under Article I of the
16  Constitution to administer the federal Bankruptcy Code, found in  title 11 of the United States Code.
17  After Congress revised the bankruptcy laws in 1978, the initial allocation of jurisdiction was found to
18  have constitutional flaws.   Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50
19  (1982).   In response to this opinion, in 1984 Congress revised bankruptcy jurisdiction.  Bankruptcy
20  Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333.

21  In this overhaul, general bankruptcy jurisdiction was conferred upon Article III district courts,
22  28 U.S.C. § 1334(b), with bankruptcy courts being made "units" of those district courts, 28 U.S.C. §
23  151.  By rule or order, each district court was then given the ability to refer all bankruptcy matters to
24  the bankruptcy courts.  28 U.S.C. § 157(a).  These referrals could be withdrawn by the district court in
25  appropriate cases, 28 U.S.C. § 157(d), or the cases and matters thus referred might be stayed if
26  appropriate federalism or comity concerns justified abstention, 28 U.S.C. § 1334(c).

1    With respect to the referred matters, Congress did not, because it could not, provide that

2 bankruptcy courts could hear and determine — that is, enter final judgments subject only to appeal —

3 all such matters.  That was the basic infirmity uncovered in *Marathon*.  What Congress did provide,

4 however, was that bankruptcy courts could hear and determine certain matters, and would draft a report

5 and recommendation for the district court on others.  Section 157(b) initially handles this division of

6 labor.  Paragraph (1) gives bankruptcy courts the power to hear and determine cases under title 11, and

7 all "core" matters that arise in or arise under title 11.  Paragraph (2) provides a nonexhaustive list of

8 core matters.  Paragraph (5) of that subsection deals specifically with the handling of personal injury

9 tort claims within this system.

10    Section 157(b) does not cover all matters within Section 1334(b)'s broad jurisdiction.  In

11 addition to bankruptcy cases, and civil proceedings arising in and under title 11, Congress also

12 conferred upon the district courts, for referral to the bankruptcy courts, jurisdiction of matters "related

13 to" cases under title 11.  Section 157(c) governs the determination of these related matters, and of

14 noncore matters set forth in Section 157(b)(1).  It empowers the bankruptcy court to hear such matters,

15 but on the condition that they be submitted to the district court for a final determination, unless the

16 parties otherwise consent.  *See* 28 U.S.C. § 157(c)(2).

17    Against this background, this opinion will establish that Adelson's claims are within the

18 jurisdiction conferred upon the district courts, were appropriately referred to this court to hear and

19 determine, and are appropriate to remain here for final determination.  This demonstration requires an

20 examination of the positive law governing jurisdiction, and an application of that law to the parties'

21 actions — or failures to act.  After a short discussion of some determinative definitional issues

22 regarding what constitutes a "personal injury tort claim," this opinion will resolve these issues.

23

24

25

26

*A.      Is Libel a "Personal Injury Tort Claim"?*

The initial inquiry is definitional.  A detailed discussion of bankruptcy court jurisdiction is unnecessary if a libel claim is not a "personal injury tort claim" within the meaning of 28 U.S.C. § 157(b)(5).  In such a case, this court could proceed directly to Adelson's motion to stay the adversary proceeding and his motion to lift the stay.  But if libel is a "personal injury tort claim," additional analysis is necessary to determine what should be done next.  The Ninth Circuit has not ruled on this issue, and the parties cite different lines of cases, each of which provide different tests for determining whether libel is a personal injury tort claim.

Generally speaking, there are three different definitions of a personal injury tort under 28 U.S.C. § 157(b)(5).  1 COLLIER ON BANKRUPTCY ¶ 3.06 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008).  The narrowest construction of personal injury tort requires the aggrieved party to plead an actual physical injury to his or her person.  Massey Energy Co. v. West Virginia Consumers for Justice, 351 B.R. 348, 351 (E.D. Va. 2006) (citing *In re* Vinci, 108 B.R. 349 (Bankr. S.D.N.Y. 1989); *In re* Interco, 135 B.R. 359 (Bankr. E.D. Mo. 1991)).  By contrast, the most expansive reading includes civil rights claims under federal antidiscrimination laws as personal injury tort claims.  *See In re* Gary Brew Enterprises Ltd., 198 B.R. 616, 618-19 (Bankr. S.D. Cal 1996) (holding that a claim for relief under 42 U.S.C. § 1983 is a personal injury tort claim); *In re* Nifong, 2008 WL 2203149 (Bankr. M.D.N.C., May 27, 2008) (same).

These two views were synthesized into a third view in *In re* Ice Cream Liquidation, Inc., 281 B.R. 154, 160-64 (Bankr. D.Conn. 2002).   That court balanced the definitions provided in *Massey Energy* and *In re Gary Brew Enterprises* to reach a middle ground in defining personal injury torts. That court rejected limiting the definition of personal injury torts to bodily injuries, because to do so would be to construe the statute more narrowly than it was written.  *Ice Cream Liquidation*, 281 B.R. at 161.

The court similarly disagreed with the "'broader' view" because it was premised on how nonbankruptcy law categorized a tort without necessarily examining the characteristics of that tort,

increasing the probability that business or financial torts could be classified as personal injury torts. *See id.* In making these determinations, the *Ice Cream Liquidation* court determined that, based on the legislative history, Congress did not intend 28 U.S.C. § 157(b)(5) to include business or financial torts. *Id.*

As a result, the middle ground struck in *Ice Cream Liquidation* includes traditional, nonphysical torts, such as defamation and libel, but does not include civil rights or sexual harassment claims. *Id.* This middle ground, therefore, encompasses torts involving bodily harm and reputational harm, without including torts that are personal injury torts by statutory designation only. This middle ground is the most appealing because it is closely aligned with what are traditionally thought of as the "common law torts;" and while it includes emotional and reputational harms, it does not go so far as to allow nonbankruptcy law to define certain torts as personal injury torts. Accordingly, without deciding whether statutory tort claims are covered, this court is convinced that the Ninth Circuit would adopt nothing less than the middle ground, and it would therefore hold that the libel claims at issue here are personal injury tort claims within the meaning of 28 U.S.C. § 157(b)(5).

   B.    *Effect of Determining That Libel Claims Are "Personal Injury Tort Claims" on This Court's Jurisdiction*

The determination that libel is a personal injury tort claim places the analysis squarely within Section 157(b). Under that structure, as outlined above, this court must first determine whether there is subject matter jurisdiction under 28 U.S.C. § 1334(b). As the Ninth Circuit has noted, "[W]e first ask whether federal jurisdiction would exist in the district court . . . in order to determine whether the bankruptcy court could have jurisdiction derivatively." Dunmore v. United States, 358 F.3d 1107, 1113 (9th Cir. 2004) (citing Fietz v. Great W. Sav. (*In re* Fietz), 852 F.2d 455, 457 (9th Cir. 1988)).

In this regard, Congress granted the district court "original but not exclusive jurisdiction" over civil proceedings "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(b). Here, there is jurisdiction to hear Adelson's two claims for relief: his claim for a declaration of nondischargeability under 11 U.S.C. § 523(a)(6) is a claim that "arises under" title 11, and, among

other connections it has to this case, his request to liquidate and assess damages is "related to" that nondischargeability claim. *See* Sasson v. Sokoloff (*In re* Sasson), 424 F.3d 864, 868 (9th Cir. 2005) ("'[R]elated to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy.'") (quoting Mann v. Alexander Dawson (*In re* Mann), 907 F.2d 923, 926 n.4 (9th Cir. 1990)). As a result, 28 U.S.C. § 1334(b) supplies jurisdiction in the district court to hear all of Adelson's causes of action.

But Congress did not intend district courts to hear all civil cases arising under or related to a bankruptcy case. It provided for a way to route all such matters to the bankruptcy court. By local rule or order, 28 U.S.C. § 157(a) permits the transfer of all such matters to the bankruptcy courts that Congress created for that purpose. This district, consistent with the practice in every other district in the United States, has provided for such an automatic transfer. *See* D. Nev. R. 1001(b)(1) ("All cases and proceedings within the bankruptcy jurisdiction of the courts are referred to the bankruptcy judges.").[2]

This transfer from district court to bankruptcy court does not result in the immediate and irrevocable ability of the bankruptcy court to enter a final order in all such matters. Under the statutory scheme that Congress adopted, the bankruptcy court must first determine whether a civil proceeding is core or noncore. 28 U.S.C. § 157(b)(3). This determination then controls as to whether the bankruptcy judge has the power to enter a binding final judgment regardless of the parties' consent; or, as the statute states it, whether the bankruptcy court has the power to "hear and determine" the matter. 28 U.S.C. § 157(c). As the Ninth Circuit has stated, "In 'core' proceedings, the bankruptcy court may hear, determine, and enter final orders and judgments." *Dunmore*, 358 F.3d at 1114.

But Section 157 does not give or take away jurisdiction to hear noncore matters; that is, it does not affect the bankruptcy court's power to hear a noncore proceeding. As stated by the Ninth Circuit:

---

[2] Although Fed. R. Bankr. P. 9029(a)(1) authorizes separate rules for bankruptcy courts apart from the rules applicable in district courts, a majority of Nevada's district judges have not implemented this provision. As a result, the administrative provisions and the special section on bankruptcy matters of the local district court rules provide the applicable rules for this matter.

In contrast, in "non-core" proceedings, the bankruptcy court is limited to hearing the matter and submitting proposed findings of fact and conclusions of law to the district court.  The district court reviews de novo any finding or conclusion objected to and enters a final order and judgment.  *See* 28 U.S.C. § 157(c)(1).  If the parties consent, the district court may expand the bankruptcy court's power to adjudicate non-core proceedings to include the power to issue final orders and judgments.

*Dunmore*, 358 F.3d at 1114.

The purpose of this division is that it "segregates those proceedings that an Article I legislative court may hear and decide by a final order from those that an Article III court must subject to nondeferential review as nonfinal orders."  *Id.*  The analysis thus proceeds by first asking whether there is subject matter jurisdiction, an inquiry under 28 U.S.C. § 1334.  Once such jurisdiction is established, the inquiry next focuses on which federal court should hear the matter: the district court directly, or the bankruptcy court by referral.

Against this background, this case presents the issue of how to integrate Section 157(b)(5) into this jurisdictional scheme, as Adelson's libel claim is, as determined above, a "personal injury tort claim."  As Section 157(b)(5) is in Section 157(b), the  distinctions drawn above between jurisdiction and procedure should inform this inquiry.  As framed by Adelson, this resolution is critical: if Section 157(b)(5) is jurisdictional, its precepts may not be waived, and this court should immediately dismiss that part of the case for which jurisdiction is lacking.  *See* Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94 (1998) (stating "without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit").  But if the provisions of Section 157(b)(5) are procedural, its requirements can be waived, either expressly or by conduct, and this court will have to examine Adelson's actions to determine whether Adelson has waived the requirements by consent or by conduct.

As with all statutory inquiry, the analysis starts with the text of the section.  Section 157(b)(5) reads:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case arose.

28 U.S.C. § 157(b)(5).

Adelson argues that Section 157(b)(5) creates a jurisdictional bar that prevents the bankruptcy court from hearing any personal injury claim.    In support of this proposition, Adelson cites *In re Goidel*, 150 B.R. 885, 888-89 (Bankr. S.D.N.Y. 1993) (referring to "the general jurisdictional proscription in 28 U.S.C. § 157(b)(5) that personal injury tort . . . claims shall not be tried in the bankruptcy court").  *See also In re* Grabill, 967 F.2d 1152, 1153 (7th Cir. 1992) (stating "Section 157(b)(5) requires that such actions [personal injury claims] be tried in the district court");  Rizzo v. Passialis (*In re* Passialis), 292 B.R. 346, 352 (Bankr. N.D. Ill. 2003) (stating that "[t]he [bankruptcy] Court lacks subject matter jurisdiction, however, to adjudicate and liquidate the slander claim", but still adjudicating whether the claim was nondischargeable under § 523(a)(6)).  Although the statements in *Goidel* and these other cases are clear, they are unsupported by any logical analysis.

Had that analysis been undertaken, however, it would have shown the lacuna in the court's logic.  Section 157(b)(5), like any other federal statute, is interpreted according to its plain meaning. As the Supreme Court has stated, "It is well established that 'when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.'"  Lamie v. United States Tr., 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (in turn quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)).  But this plain meaning must take into account the context of the statute we are called upon to interpret.  "Our goal in interpreting a statute is to understand the statute 'as a symmetrical and coherent regulatory scheme' and to 'fit, if possible, all parts into a . . . harmonious whole.'"  Am. Bankers Ass'n v. Gould, 412 F.3d 1081, 1086 (9th Cir. 2005) (quoting Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)).  *See also* Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989)("[S]tatutory language cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Against this interpretive background, it is significant that Section 157(b)(5) is not worded as Congress might normally construct a restrictive jurisdictional statute.  It does not say, for example, "Personal injury and wrongful death claims shall be heard exclusively by the district court, and not by the bankruptcy court" or "Notwithstanding Section 157(a), jurisdiction of personal injury and wrongful death claims shall not be referred to the bankruptcy court."  *Cf.* 28 U.S.C. § 1334(a) ("[T]he district courts shall have original and exclusive jurisdiction of all cases under title 11"); 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction [of admiralty matters], exclusive of the courts of the States . . . ."); 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.") (matters related to Securities Exchange Act of 1934).  *See generally* 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE & PROCEDURE § 3527 (2d ed. 1984 & Supp. 2008).  Rather, Section 157(b)(5) refers only to where a matter may be tried (presumably after all pretrial matters have been resolved, and presumably resolved by a court with jurisdiction),[3] and then provides only that the location of such trials "shall [be] order[ed]" by the district court to be in the district court.  This wording is a far cry from a grant of exclusive jurisdiction to the district court of all personal injury and wrongful death claims.  Rather, it is perfectly consistent with a referral to this court of such matters, with a mandatory withdrawal to the district court should the district court so order, and as may be consistent with the statute.  In this

---

[3]On a related issue, the Ninth Circuit has held that a bankruptcy court may retain pretrial jurisdiction of a matter for which there is a jury trial right.  Sigma Micro Corp. v. Healthcentral.com (*In re* Healthcentral.com), 504 F.3d 775, 787 (9th Cir. 2007) (agreeing with those courts that hold that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court. . . . Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters.").  *See also In re* Pacific Gas & Elec. Co., 279 B.R. 561 (Bankr. N.D. Cal. 2002) (bankruptcy court may determine pretrial matters such as relief from stay and abstention motions); *In re* New York Medical Group, P.C., 265 B.R. 408, 412 (Bankr. S.D.N.Y. 2001) (Section 157(b)(5) does not deprive bankruptcy court of administrative jurisdiction over personal injury tort claim, and bankruptcy court may entertain motion for relief from stay to allow tort claim to proceed in state forum).

1   manner, the operation of Section 157(b)(5) appears to be similar to the procedure for general

2   withdrawal of the reference.  28 U.S.C. § 157(d).

3          But in this case there is no general order or local rule withdrawing such matters, and Adelson

4   has not requested the district court to withdraw the reference.  *See* Fed. R. Bankr. P. 5011; D. Nev. R.

5   5011; Rohr v. Northwestern Corp. (*In re* Northwestern Corp.), No. 03-12872 CGC, 04-110 JJF, 2004

6   U.S. Dist. LEXIS 7702, 2004 WL 1044421 (D. Del., April 29,  2004) (movant established sufficient

7   cause to withdraw the reference from bankruptcy court in light of fact that section 157(b)(5) required

8   personal injury tort claims to be resolved in district court).[4]  Without such an order, jurisdiction to hear

9   such matters would remain in the bankruptcy court, where it was referred by operation of the general

10  order of referral, until such time as a timely request to transfer the case was made.  *See In re* UAL

11  Corp., 310 B.R. 373, 383 (Bankr. N.D. Ill. 2004) (bankruptcy court has at least noncore jurisdiction

12  over personal injury tort claims, and it may hear and determine allowance of such claims).

13         *Leslie Fay* adopted this analysis.  *In re* Leslie Fay Cos., 212 B.R. 747 (Bankr. S.D.N.Y. 1997).

14  In that case, the bankruptcy court analogized 28 U.S.C. § 157(b)(5) to a noncore proceeding.  *Id.* at 773.

15  As with the core versus noncore distinction, the court found that the requirements of Section 157(b)(5)

16  did not present issues of  jurisdiction, but rather issues regarding the allocation of authority to enter

17  final judgments between the bankruptcy court and the district court.  *Id.* ("Section 157(b)(5) does not

18  change the result, for the provision only directs the procedure once it is determined that an action is a

19  personal injury tort."); *see also* Mintze v. American Gen. Fin. Serv.,  Inc. (*In re* Mintze), 434 F.3d 222,

20  228-29 (3d Cir. 2006) (finding bankruptcy court had subject matter over noncore matter for purposes

21  of whether arbitration clause could be enforced).

22         The analogy drawn in *Leslie Fay* between noncore proceedings and the power of the bankruptcy

23  court to hear a personal injury case is sound.  Section 157(b) generally, and Section 157(b)(5) in

24  particular, do not create or destroy jurisdiction.  They simply allocate the jurisdiction already conferred

25

26         [4]Under D. Nev. R. 5011(b), the time for filing a request to withdraw the reference has passed.

1  upon federal courts in an effort to answer the question as to whether a bankruptcy court may enter a

2  binding judgment, or whether it must make proposed findings of fact and conclusions of law for the

3  district court's use.

4      This distinction between conferring jurisdiction and allocating jurisdiction once conferred

5  illuminates the logical conclusion that Adelson fails to reach — that lack of jurisdiction over personal

6  injury cases generally would mean a lack of jurisdiction for specific matters related to such cases, *see*

7  *Steel Co.*, 523 U.S. at  94, and this proposition is contrary to accepted law and practice.[5]  In making

8  distinctions between core and noncore proceedings, Section 157(b) expressly mentions personal injury

9  tort claims, and it provides that they are not core matters, creating the inference that they are noncore

10  matters over which this court has jurisdiction.  *See, e.g.*, 28 U.S.C. § 157(b)(2)(B) (declaring core

11  matters relating to allowance or disallowance of claims except if they  pertain to "the liquidation or

12  estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate

13  for purposes of distribution . . . ."); § 157(b)(2)(O) (declaring core "other proceedings affecting the

14  liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder

15  relationship, except personal injury tort or wrongful death claims").[6]

16      Besides this legal impediment, there is also a practical one.  Holding that there is no jurisdiction

17  over personal injury tort claims would also prevent the court from estimating personal injury claims

18

---

19      [5]Even courts that hold that exclusive jurisdiction is in the district court permit nondischargeability
20  determinations regarding the exact same claim to proceed in bankruptcy court. *See, e.g.*, Rizzo v. Passialis (*In
   re* Passialis), 292 B.R. 346, 352 (Bankr. N.D. Ill. 2003).

21      [6]The jurisdiction in the bankruptcy court for pretrial estimation is supported by the following statement
   in the *Congressional Record*:
22          The estimation of contingent or unliquidated claims in order to allow or provide for the
            distribution of an estate would, of course, be a core proceeding. I think it was intended,
23          certainly by the conferees, that the estimation function, and thus the proceeding with the
            distribution, would not be interfered with by the change that was wrought to deal with the
24          personal injury court [sic] actions and wrongful death actions at the instance of the junior
            Senator from Ohio in the conference yesterday.
25  130 CONG. REC. 20,229 (daily ed. June 29, 1984) (rem. of Rep. Kindness).  A more exhaustive examination of
   the legislative history of the amendments, which demonstrate a more equivocal view, is set forth in *In re* UAL
26  Corp., 310 B.R. 373, 382-83 & n.9 (Bankr. N.D. Ill. 2004).

under Section 502(c), which is also contrary to the current state of the law.  *See In re* Dow Corning Corp., 211 B.R. 545, 562-64 (Bankr. E.D. Mich. 1997) (denying motion to estimate claims for noncompliance with Section 502(c) but not on jurisdictional grounds); G-I Holdings, Inc. v . Bennett (*In re* G-I Holdings, Inc.), 295 B.R. 211, 219-19 (Bankr. D.N.J. 2003) (withdrawing the reference to the bankruptcy court would be improper because the committee planned to have that court estimate the value of personal injury claims, which is a core proceeding).

In short, a conclusion that 28 U.S.C. § 157(b)(5) is jurisdictional would effectively destroy the bankruptcy court's ability to estimate or otherwise treat personal injury claims.  This could unacceptably limit the bankruptcy system's ability to effectively resolve bankruptcy cases involving personal injury claims, calling into question the ability to decide megatort claims such as those presented in A.H. Robins or Dow Corning.  *Leslie Fay* avoids this problem because it recognizes that there is no *jurisdictional* bar to a bankruptcy court's hearing an adversary proceeding grounded in a personal injury case.

To be clear, the district court will almost always hear personal injury cases, especially if a timely request to do so is made.  That is the allocative aspect of Section 157(b)(5).  But since the right to have such cases heard in district court is not jurisdictional, it is also not inviolable; parties may waive the right by consent or by action.  As recognized generally in the Ninth Circuit with respect to the core/noncore distinction, and as recognized specifically in *In re Leslie Fay*, a party may waive the rights attendant to holding a claim classifiable as a personal injury tort claim.  This opinion now turns to whether Adelson waived that right here.

C.    *Adelson Waived the Right to Have the District Court Determine His Libel Claims*

In assessing whether Adelson waived his right to a determination in another court, the following simple facts are undisputed:

- Paragraph 4 of Adelson's complaint commencing this adversary proceeding explicitly states, "This is a core proceeding in Defendant's Bankruptcy Case pursuant to 28 U.S.C. § 157(b)(2)(I)."[7]

- Paragraph 1 of the Prayer for Relief in Adelson's complaint requests "[t]hat the court determine that Defendant [Smith] is indebted to Plaintiff [Adelson] in the amount of at least $15 million plus interest, attorneys' fees and costs that continue to accrue and that Plaintiff [Adelson] is entitled to judgment in that amount plus such other amounts, all as to be proven at trial."

- Paragraph 2 of the Prayer for Relief in Adelson's complaint requests "[t]hat Defendant's [Smith's] debt arose as a result of Defendant's [Smith's] willful and malicious injuries to Plaintiff [Adelson] as alleged herein and that the debt be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6)."

- Adelson's complaint did not request or demand a jury trial, and Adelson did not file any separate demand or request for a jury trial in the adversary proceeding before filing these motions.

- On February 8, 2008, Adelson filed a proof of claim in this case. The amount of the claim was unliquidated, and Adelson referred to both the California state court action and the nondischargeability proceedings as courts in which the claim would need to be liquidated.

These facts establish that Adelson has consented to this court's jurisdiction to liquidate his libel claim without a jury.

Any inquiry should start with the basic proposition that the nondischargeability allegation is a core matter for which the bankruptcy court has exclusive jurisdiction. Sasson v. Sokoloff (*In re Sasson*), 424 F.3d 864, 869 (9th Cir. 2005), *cert. denied*, 547 U.S. 1206 (2006). *See also* 11 U.S.C. §

---

[7]The rules applicable to this adversary proceeding required Adelson to state his position regarding whether this matter was core or noncore. FED. R. BANKR. P. 7008(a).

523(c); 4 COLLIER ON BANKRUPTCY, *supra* at ¶ 523.03 ("[T]he bankruptcy court has exclusive jurisdiction of dischargeability determinations under section 523(a)(2), (4) and (6)."). Intertwined with the nondischargeability determination, however, is the determination of whether there is a debt owed, and if so, its amount. In the Ninth Circuit, this is a determination that can be made by the bankruptcy court without a jury. *In re* Sasson, 424 F.3d at 870. *Sasson* reasons that because determination of dischargeability is "exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury." *Sasson*, 424 F.3d at 869-70 (quoting Cowen v. Kennedy (*In re* Kennedy), 108 F.3d 1015, 1017-18 (9th Cir.1997)). *See also* Hickman v. Hana (*In re* Hickman), 384 B.R. 832, 838 (B.A.P. 9th Cir. 2008).[8]

*Sasson* thus stands directly for the proposition that this court has the power to determine Smith's liability to Adelson, if any, as well as the amount of any damages. There is nothing to block the extension of this reasoning to tort claims under Section 157(b)(5) to the extent that the district court has not, in the words of the statute, "order[ed] that personal injury and wrongful death claims shall be tried in the district court . . . ." Indeed, *Sasson* itself involved a claim under Section 523(a)(6). Presumably, this state of the law explains why Adelson stated in his complaint that this matter is core, and why he specifically asked this court to determine whether Smith libeled him.

Given the above, Adelson's current position is puzzling. His complaint conceded that it raised core claims, and it specifically asked this court, long before the court raised Section 157(b)(5) as an issue, to hear and determine the existence and amount of his libel claim. He never moved for withdrawal of the reference, and he never made any request, in this court or in the district court, for an

---

[8]This court is aware that not all circuits adopt as broad a view of a bankruptcy court's powers as does *Sasson*, and that the relief requested here might be appropriate in those jurisdictions. *See* Goldschmidt v. Erickson (*In re* Erickson), 330 B.R. 346, 349-50 (Bankr. D. Conn. 2005) ("In light of the fact that this court cannot liquidate the discrimination claim, it is readily apparent that the movant is entitled to relief from stay so that she may liquidate the claim."); *In re* Nifong, 2008 WL 2203149 (Bankr. M.D.N.C., May 27, 2008). Nonetheless, *Sasson* is controlling here.

15

order directing that his case be heard before an Article III district judge.  Such actions are indicative
of, and consistent only with, consent to have this court hear such matters.  And this court so finds.

But even if these actions do not constitute express consent within the meaning of Section
157(b)(3) and (5), they certainly constitute implied consent, and implied consent is sufficient in this
circuit for such matters.  Mann v. Alexander Dawson (*In re* Mann), 907 F.2d 923, 926 (9th Cir. 1990)
(failure to raise objection that bankruptcy court was hearing a noncore matter before bankruptcy court
entered judgment  constitutes consent to have bankruptcy court hear matter); Daniels-Head & Assocs.
v. William M. Mercer, Inc. (*In re* Daniels-Head & Assocs.), 819 F.2d 914, 918-19 (9th Cir.1987)
(finding that, with respect to type of consent necessary, "consent implied from the parties' actions is
sufficient.") (citing  DuVoisin v. Foster (*In re* Southern Indus. Banking Corp.), 809 F.2d 329, 331 (6th
Cir.1987) ("the absence of a timely objection to the bankruptcy court's jurisdiction constitutes implied
consent to the resolution of the controversy")); Price v. Lehtinen (*In re* Lehtinen), 332 B.R. 404, 410
(B.A.P. 9th Cir. 2005) (failure to object to bankruptcy court's hearing of noncore matter until appeal
overruled; waiver constituted consent).[9]

Adelson's other actions cement this view.  Adelson makes much of the fact that he will lose his
jury trial right if this court hears and determines the issues raised in his complaint.  That claim is
specious.  Adelson lost his right to a jury determination when he failed to request a jury within ten days
after filing his initial complaint.   FED. R. BANKR. P. 9015 (incorporating FED. R. CIV. P. 38(b) & (d),
which provide for a waiver of a jury trial right if the person requesting a jury does not serve "a written
demand . . . no later than 10 days after [service of ] the last pleading directed to the issue . . . .").  *See
also* D. NEV. R. 9015(c) ("A demand for a jury trial must appear immediately following the title of the

---

[9]An argument against consent by action might be made by analogy to the rules regarding referrals to
magistrate judges; because consent cannot be lightly inferred in the context of proceedings before magistrate
judges, see Nasca v. Peoplesoft, 160 F.3d 578 (9th Cir. 1998), neither should consent be inferred in the context
of proceedings before bankruptcy judges.  But *In re Daniels-Head* expressly rejected this comparison, holding
that there were differences between the Federal Magistrates Act and the Bankruptcy Act with regard to the issue
of implied consent.  819 F.2d at 918 ("[T]he Magistrates Act specifically requires the parties' explicit consent
to the magistrate's jurisdiction . . . .    The 1984 [Bankruptcy] Act, on the other hand, does not, on its face,
require explicit consent.").

complaint or answer containing the demand, or in another document as may be permitted by FED. R. CIV. P. 38(b).").

And if there was any doubt about his loss of a right to a jury trial, he reaffirmed that loss when he filed a proof of claim in this case. Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990). As the Ninth Circuit has explained, filing a proof of claim has serious consequences.

> When a creditor submits to bankruptcy court jurisdiction by filing a proof of claim in order to collect all or a portion of a debt, it assumes certain risks. For example, the creditor loses the right to a jury trial on any counter-claims filed by the debtor or the trustee. *See Langenkamp*, 498 U.S. at 44-45, 111 S.Ct. 330. In addition, the creditor loses previously-held rights to assert "legal claims" against the debtor and his estate; bankruptcy "converts the creditor's legal claim into an equitable claim to a pro rata share of the res." Katchen [v. Landy], 382 U.S. [323], at 336, 86 S.Ct. 467 [(1966)].

Hong Kong and Shanghai Banking Corp., Ltd. v. Simon, 153 F.3d 991, 997 (9th Cir. 1998).[10]

To conclude, this court has subject matter jurisdiction over all claims for relief in Adelson's complaint. It has exclusive jurisdiction over Adelson's core claim for relief for nondischargeability, and Adelson has consented to this court's determination and liquidation of any debt owed to him by Smith. As Adelson has failed to seek or obtain an order under Section 157(b)(5) directing that the matter be tried in the district court, this court has the matter properly before it. Consideration of Adelson's remaining requests are now in order.

### III. Motion to Stay Adversary Proceeding

Adelson also moved to stay the prosecution of adversary proceeding. His six-page motion cites two cases, and two cases only. One is a 1936 United States Supreme Court case, Landis v. North American Co., 299 U.S. 248 (1936), and the other is a more recent Ninth Circuit case, Lockyer v. Mirant Corp., 398 F.3d 1098 (9th Cir. 2005), that cites *Landis*. What is striking about this relative lack

---

[10]Adelson's proof of claim purports to reserve his right to jury trial, but he can no more stave off a waiver in that manner than he could accede to this court's jurisdiction only on the condition that he win. As *Langenkamp* and *Simon* establish, filing a proof of claim carries with it undeniable waivers and risks, and Adelson and his lawyers should have known of these when they filed Adelson's complaint and his proof of claim.

of authority is what Adelson did *not* do: he did not move to abstain under 28 U.S.C. § 1334(c).[11]  As a result, the standards of the two cases cited control this motion.

Neither *Landis* nor *Lockyer* justify a stay in this case.  *Landis* stands for the proposition that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254.  But the Court went on to state that "[h]ow [the exercise of this power] can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Id.* at 254-55.  This judgment must be exercised only when:

> the suppliant for a stay  . . . make[s] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that define the rights of both.

*Id.* at 255.

In *Lockyer*, after finding that the automatic stay did not apply to district court litigation outside of the chapter 11 debtor's home court, the court addressed the propriety of a stay under *Landis*.  Citing prior authority, the court indicated that:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

398 F.3d at 1110 (citing CMAX, Inc. v. Hall, 300 F.2d 265 (9th Cir. 1962)).

In reversing the district court's grant of a stay, the Ninth Circuit focused on the fact that in past cases invoking *Landis* (and in which a *Landis* stay was denied), the only remedy sought was damages;

---

[11]Part of Adelson's motion for relief from stay cites cases involving abstention, and at one point asks for relief from stay for abstention.  But Adelson never asks this court to abstain under 28 U.S.C. § 1334(c).  All he has done is ask for relief from stay and for a stay of the adversary proceedings.  This court has take Adelson's papers at face value, but it notes that even had Adelson properly sought abstention, it would not have been granted given Adelson's delay in bringing the issue to this court, and the later trial date in California state court, both of which contribute to the fact that the California state court proceeding cannot be timely adjudicated as required by Section 1334(c)(1).

18

there was no injunction seeking cessation of continuing harm. *Id.* at 1112. As in this case, the remedial request is backward-looking: a request for damages for alleged past harm. In such cases, the Ninth Circuit adopted the Supreme Court's quotation above, and denied a *Landis* stay when there was a "fair possibility" that the stay would "work damage" to the party being stayed. *Id.*

Here, Smith's discharge can be determined only by this court; as indicated before, a bankruptcy court has exclusive jurisdiction of nondischargeability proceedings under Section 523(a)(6). *Sasson*, 424 F.3d at 869-70. Moreover, this court can hear and determine the nondischargeability issues before Adelson's California lawsuit could be tried. For these and other reasons, there is more than a "fair possibility" of damage to Smith if this case is delayed while the California lawsuit moves forward. Accordingly, the motion to stay the adversary proceeding is denied.

### IV.  Motion for Relief From Stay to Pursue State Court Action

Adelson seeks relief from the stay in order to pursue his California libel action. The automatic stay imposed by § 362(a) applies to Adelson's California action, as it is a judicial proceeding to recover a prepetition claim from the debtor. 11 U.S.C. § 362(a)(1). However, relief from the automatic stay may be granted "for cause." 11 U.S.C. § 362(d)(1). Adelson seeks relief on three independent grounds: that cause exists to defer to the California litigation; that cause exists because abstention would be appropriate; and that Smith's lack of good faith in filing his bankruptcy case provides the necessary cause. Each of these will be examined.

*A.    Cause to Pursue Litigation in Another Forum*

Although the term "cause" is not defined in the Code, courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the nonbankruptcy suit involves multiple parties or is ready for trial. *See, e.g.*, Christensen v. Tucson Estates, Inc. (*In re* Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir. 1990) (stating that "[w]here a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial"); Packerland Packing Co. v. Griffith Brokerage Co. (*In re* Kemble), 776 F.2d 802, 807 (9th Cir. 1985)

(affirming an order lifting the stay to permit a creditor to pursue a conversion and fraudulent conveyance action pending in the federal district court following a remand of the case by the appellate court for a retrial on the damages issue).[12]

The burden of proof on a motion to modify the automatic stay is a shifting one. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (*In re* Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990). To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists for relief under § 362(d)(1). Mazzeo v. Lenhart (*In re* Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999); Duvar Apt., Inc. v. Fed. Deposit Ins. Corp. (*In re* Duvar Apt., Inc.), 205 B.R. 196, 200 (9th Cir. BAP 1996). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. 11 U.S.C. § 362(g)(2); *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at 200. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied. Spencer v. Bogdanovich (*In re* Bogdanovich), 292 F.3d 104, 110 (2d Cir. 2002); *Mazzeo*, 167 F.3d at 142; *Kim*, 71 B.R. at 1015.

1.    The *Sonnax/Curtis* Factors

Courts have identified various factors relevant to determining whether the stay should be lifted to allow a creditor to continue pending litigation in a nonbankruptcy forum.[13] In particular, most courts analyze twelve nonexclusive factors as issues a bankruptcy court should weigh in determining whether to lift the stay to permit pending litigation to continue in another forum:

1.    Whether the relief will result in a partial or complete resolution of the issues;

---

[12]Section 362(a)'s legislative history supports this conclusion:
[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.
H.R. REP. NO. 595, 95TH CONG., 1ST SESS. 341 (1977); S. REP. NO. 989, 95TH CONG., 2D SESS. 50 (1978).

[13]These factors are closely related to those that a bankruptcy court must consider in deciding whether to exercise permissive abstention under 28 U.S.C. § 1334(c)(1). *In re* Hakim, 212 B.R. 632, 639 (Bankr. N.D. Cal. 1997). *See also Tucson Estates*, 912 F.2d at 1167. Of course, in this case Adelson has not requested abstention.

2.     The lack of any connection with or interference with the bankruptcy case;

3.     Whether the foreign proceeding involves the debtor as a fiduciary;

4.     Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5.     Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6.     Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7.     Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8.     Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9.     Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10.    The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11.    Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12.    The impact of the stay on the parties and the "balance of hurt."

These twelve factors originated in *In re* Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) and were adopted by the Second Circuit Court of Appeals in *Sonnax*, 907 F.2d at 1285. Other courts have also adopted them. *See, e.g., Bogdanovich*, 292 F.3d at 110 n. 1; *Mazzeo*, 167 F.3d at 142-43; Goya Foods, Inc. v. Unanue-Casal (*In re* Unanue-Casal), 159 B.R. 90, 96 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994); Walker v. Wilde (*In re* Walker), 103 B.R. 281, 284-85 (D. Utah 1989); Busch v. Busch (*In re* Busch), 294 B.R. 137, 141 n. 4 (10th Cir. BAP 2003); Truebro, Inc. v. Plumberex Specialty Prods., Inc. (*In re* Plumberex Specialty Prods., Inc.), 311 B.R. 551 (Bankr. C.D. Cal. 2004).

1   The Second Circuit first applied the *Curtis* factors in *Sonnax*, which has become the leading case

2   at the circuit level.  As noted in *Sonnax*, not all of the twelve *Curtis* factors are relevant in every case.

3   *Id.* at 1286; *see Mazzeo*, 167 F.3d at 143.  Nor is a court required to give each of the *Curtis* factors equal

4   weight in making its determination.  Burger Boys, Inc. v. S. St. Seaport Ltd. Pa. (*In re* Burger Boys,

5   Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994); *In re* N.Y. Med. Group, P.C., 265 B.R. 408, 413 (Bankr.

6   S.D.N.Y. 2001).

7                2.       Application of the *Sonnax/Curtis* Factors

8        Application of the *Sonnax/Curtis* factors is relatively easy.  Some of the factors do not apply;[14]

9   others only tangentially.[15]  The remaining five factors — numbers 1, 2, 10, 11, and 12 — in turn

10  encompass a common-sense approach to the allocation of litigation between this court and the

11  California forum.

12       Factor 1 relates to whether relief in the California forum would result in a complete

13  adjudication.  It would not.  As has been stated, this court has exclusive jurisdiction over the

14  nondischargeability claim for relief.  *Sasson*, 424 F.3d at 869-70.  At most, the California court will

15  adjudicate the liability, if any, on the libel claim, but not the nondischargeability of it in bankruptcy.

16  As a result, this forum is the only forum in which there can be complete resolution of all the issues.

17

18  _____

19       [14]Smith is not a fiduciary to Adelson or anyone else, and thus factor 3 does not apply.  He also has no

20  insurance coverage for the California action; his publisher is apparently not covering his legal defense costs. As a consequence, factor 5 does not apply.  Smith clearly is not a bailee or other conduit, eliminating the relevance of factor 6.  Any libel judgment would likely not be subject to subordination, and thus factor 8 is

21  inapplicable.  Finally, no judgment in the California action could, without further action such as domestication in Nevada, result in a judicial lien Smith could avoid under Section 522(f), thus eliminating factor 9.

22       [15]The California Superior Court is able constitutionally to try libel cases before a jury, and thus might

23  be argued to be a specialized tribunal with specialized expertise as outlined in factor 4.  But this factor anticipates courts that have special jurisdiction or expertise, such as probate courts and will contests, or, as in

24  Colorado, water courts and water rights.  *See* www.courts.state.co.us/supct/supctwaterctindex.htm.  Finally, as this is a chapter 7 case, the California litigation would have some minor effect on other interested parties (such

25  as other creditors who have filed nondischargeability cases based on alleged libel), but the interest of such litigants is far more attenuated than the interest of a creditors' committee in an operating chapter 11 case. Factor

26  7 is thus only minimally relevant.

22

Factor 2 relates to the connection or interference with the bankruptcy case.  This issue also favors Smith, but in a minor way.  Deference to the California state forum would prolong Smith's bankruptcy, but not by a significant amount.  The evidence — such as it is — indicates that a libel trial can be held in California within several months after this court decides the nondischargeability issues.

This connection also assists with factor 10, the interests of judicial economy.  Since this forum is the only court with jurisdiction over all of Adelson's claims for relief, it initially makes sense that resources would be conserved and costs saved if the matter were tried entirely here.  This is especially true here given that this court can go to trial before the California court, and because it is clear that Adelson has waived his jury trial rights in this forum.[16]

Factor 11 favors Adelson; the California case was within a week of trial when Smith filed his bankruptcy case.  But Adelson dallied in filing his nondischargeability complaint — waiting several months after Smith filed his bankruptcy case to do so — and then waited another three months before even seeking relief to proceed in California.  This delay belies Adelson's stated desire for swift resolution.  In addition, due in large part to this delay, the slim and likely unreliable evidence Adelson proffered indicates that early 2009 is the first likely time that the California trial could be reset.  *See* note 1, *supra*, and accompanying text.  Against this background, the fact that trial was imminent in California when Smith filed his case recedes significantly in relevance.  Adelson's sluggish and dawdling response to Smith's bankruptcy filing is now the main cause for a late trial in California; Smith's bankruptcy filing has receded in significance as the reason why Adelson cannot have a quick trial.

---

[16]The legislative history of Section 362(a) indicates that deference is sometimes appropriate when dealing with pending lawsuits stayed by a bankruptcy filing:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R. REP. NO. 595, 95TH CONG., 1ST SESS. 341 (1977); S. REP. NO. 989, 95TH CONG., 2D SESS. 50 (1978).  In addition, the Ninth Circuit has indicated that bankruptcy courts should consider judicial economy when deciding stay issues.  *See* Piombo Corp. v. Castlerock Prop. (*In re* Castlerock Prop.), 781 F.2d 159, 163 (9th Cir. 1986).

1   Finally, Factor 12 directs the court to examine the impact of the stay on the parties and the
2   "balance of hurt." This factor favors Smith. He is a chapter 7 debtor with significant family medical
3   expenses and a business need to stay in the city in which he works. Adelson is a global casino magnate
4   who wishes a quick resolution of this matter. Both parties would thus seem to benefit from an
5   adjudication by this court; Smith for the lack of expenses and inconvenience that a California trial
6   would cause, and Adelson for the quicker resolution that this court can offer.

7   On balance, with most factors favoring Smith, this court finds that the *Sonnax/Curtis* factors do
8   not indicate that Adelson has established sufficient cause for relief from stay.

9   *B.    Cause for Stay Relief and Grounds for Abstention Under 28 U.S.C. § 1334(c)*

10   Although Adelson has not moved for this court to abstain in favor of the California litigation,
11   its motion to lift the automatic stay states that "[c]ause exists to grant stay relief on abstention
12   grounds."[17] The Ninth Circuit has recognized this type of cause. Christensen v. Tucson Estates, Inc.
13   (*In re* Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir. 1990) ("Where a bankruptcy court may
14   abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause
15   may exist for lifting the stay as to the state court trial."). In *Tucson Estates*, the Ninth Circuit adopted
16   a multifactor test.[18] These factors are:

17   (1) the effect or lack thereof on the efficient administration of the estate if a Court
18   recommends abstention, (2) the extent to which state law issues predominate over
     bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the
     presence of a related proceeding commenced in state court or other nonbankruptcy
19   court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of
     relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the

20

21   [17]Normally, a party would simply seek an order requiring this court to abstain from hearing the
22   liquidation portion of the nondischargeability proceeding in favor of a determination in the California action.
     *See* 11 U.S.C. § 1334(c)(2); Fed. R. Bankr. P. 5011(b) & (c).

23   [18]After citing *Tucson Estates*, Adelson strangely moves to a Sixth Circuit case, *In re* Dow Corning
24   Corp., 113 F.3d 565 (6th Cir. 1997) as stating the standard for relief from stay when abstention issues exist.
     This court prefers and applies (because, in each case it must) Ninth Circuit precedent, especially when it is on
     point, as *Tucson Estates* is here. And in any event, abstention under both § 1334(c)(2) and *Dow Corning*
25   requires a "timely" adjudication in another forum. The evidence here is that this court will be able to adjudicate
     the nondischargeability proceeding before trial can be rescheduled in California state court. This court thus
26   finds that there can be no timely adjudication in the California state court.

24

substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Tucson Estates*, 912 F.2d at 1167 (citing *In re* Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987).

On balance, these factors weigh in favor of Smith. Initially, with respect to the first factor, allowing the California action to proceed will delay Smith's discharge and the administration of his case. The simple fact remains that this court can get to trial quicker than the California court.

The second factor is relatively neutral. Although California law issues will determine whether Smith libeled Adelson, the interpretation of whether such libel, if found, is "willful and malicious" is exclusively a matter of federal law, and thus properly before this court. *Sasson*, 424 F.3d at 869-70.

The third factor also favors Smith; identification of the elements of the California law of libel is particularly difficult to state, and the law is unsettled. *See, e.g.*, CAL. CIVIL CODE § 45; Khawar v. Globe Int'l, Inc., 19 Cal. 4th 254, 965 P.2d 696 (1998); Smith v. Maldonado, 72 Cal. App. 4th 637, 645, 85 Cal. Rptr. 2d 397, 402 (1st Dist. Ct. App. 1999); 5 WITKIN, SUMMARY OF CALIFORNIA LAW, TORTS § 529(2), at p. 782 (10th ed. 2005).

Factor four favors Adelson; the California action is a related proceeding in a nonbankruptcy court. Factor five also favors Adelson; while he claims residence in Malibu, California, nothing in these proceedings has established the state in which he is a citizen (if a California citizen, diversity jurisdiction would be an alternate ground for this court to entertain the lawsuit), and thus the jurisdictional basis is primarily, if not exclusively, 28 U.S.C. § 1334(b).

The sixth and seventh factors favor Smith. When viewed from the perspective of Smith's discharge, the nondischargeability adversary proceeding is central to this bankruptcy case, and a matter that may be determined only in this court. On the other hand, it is possible that a judgment could be rendered in Adelson's favor, after much time and expense, in a California court that would then be

discharged by a finding in this court that Smith did not act willfully or maliciously, as those terms are understood in bankruptcy law.

The eighth factor also favors Smith, as it makes little sense to sever the libel determination from the nondischargeability determination, as indicated above. The fact that this court could give Adelson five trial days within the same year as the filing indicates that the trial of this matter is not a significant burden on this court's docket, indicating that factor nine favors Smith.

The only allegation of forum shopping — the focus of the tenth factor — is that Smith filed his case in bad faith, and that allegation is dealt with in Smith's favor in the next section of this opinion. Suffice it to say, however, that this court finds no bad faith in Smith's filing.

As indicated above, Adelson has waived his right to a jury trial, thus favoring Smith again with respect to the eleventh factor. Finally, the twelfth factor, the presence of nondebtor parties, favors Adelson, given that Smith's publisher is a codefendant in the California action. At oral argument, Smith's counsel represented that Smith's publisher is not covering Smith's legal defense costs and is not considered a likely source of funds as a codefendant on any judgment.

This analysis demonstrates that Smith's interest in a prompt resolution of his nondischargeability action in this forum is stronger than Adelson's interest in restarting the California action. The basic fact remains that if the bankruptcy discharge is to mean anything, it should mean that a debtor need not go through a long trial out of state in a forum chosen by Adelson only to undergo a second trial on essentially the same issues here. Adelson has not demonstrated cause on abstention-related grounds.

### C.    Cause and Smith's Alleged "Bad Faith" Filing

Adelson points to the closeness in time between the scheduled start of the California trial and Smith's filing of his bankruptcy case. He contends that such a short period — five days — constitutes bad faith, and that such bad faith provides "cause" under Section 362(d) to grant relief from stay.

Adelson's argument is unsound. Adelson's initial authorities all relate to bad faith inherent in filing a chapter 11 case for a newly formed entity to which real property had been recently transferred

in an effort to thwart foreclosure of those properties, Meadowbrook Investors' Group v. Thirtieth Place, Inc. (*In re* Thirtieth Place, Inc.), 30 B.R. 503 (9th Cir. B.A.P. 1983); *In re* Yukon Enters., Inc., 39 B.R. 919 (Bankr. C.D. Cal. 1984); Duggan v. Highland First Ave. Corp., 25 B.R. 955 (Bankr. C.D. Cal. 1982), or cases involving dismissal of a reorganization bankruptcy filed to thwart state procedural rules and delay payment of a debt within the ability of the debtor to pay, Marsch v. Marsch (*In re* Marsch), 36 F.3d 825 (9th Cir. 1994); Leavitt v. Soto (*In re* Leavitt), 209 B.R. 935 (9th Cir. B.A.P. 1997), *aff'd*, 171 F.3d 1219 (9th Cir. 1999).   Of course, neither of those fact patterns is present here.

The only Ninth Circuit case cited by Adelson that is even remotely applicable is Idaho v. Arnold (*In re* Arnold), 806 F.2d 937 (9th Cir. 1986).  And that case favors Smith.  In *Arnold* the debtors had defaulted on real estate purchase contracts; the nondebtor party on the contract was the State of Idaho. The state sought relief from stay on the basis of the debtors' bad faith filing, noting that the filing avoided a scheduled foreclosure, and that the proceeds of the foreclosure would have been earmarked for public purposes, namely public school endowments.  In affirming a denial of stay relief, *Arnold* states:

> The existence of good faith depends on an amalgam of factors and not upon a specific fact. *Matter of Littlecreek Development Co.*, 779 F.2d at 1072. The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment. *Id.* Said a Ninth Circuit bankruptcy panel:
>> If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses . . . to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation, namely, to attempt to effect a speedy efficient reorganization, on a feasible basis . . . good faith cannot be denied.
> *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (Bankr. App. 9th Cir.1983) (quoting *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir.1937)).
>> Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process.

*Id*. at 939.

Eight years after *Arnold*, the Ninth Circuit reaffirmed the basic principles of that case.  "The test [of good faith] is whether a debtor is attempting to unreasonably deter and harass creditors or

27

1   attempting to effect a speedy, efficient reorganization on a feasible basis."  Marsch v. Marsch (*In re*

2   Marsch), 36 F.3d 825, 828 (9th Cir. 1994) (per curiam);[19] *Plumberex*, 311 B.R. at 560.  *See also* 3

3   COLLIER ON BANKRUPTCY, *supra*, ¶ 362.07[7][a].

4          Here, there is no clear abuse of the bankruptcy process, and no real evidence of an intent to deter

5   or harass creditors.  It is beyond dispute that Smith has financial problems other than those caused by

6   the libel action; he has a family member with significant medical expenses.[20]  And Adelson knows this;

7   he publicly offered to establish a $200,000 medical and educational fund for Smith and his family, an

8   offer that Smith rejected because, he said, accepting the money would compromise his objectivity in

9   his future columns involving Adelson.[21]

10         Yet Adelson contends in his moving papers that Smith "has no *need* for the bankruptcy

11  process."  (Emphasis in original).  This assertion is based on the *ipse dixit* that "Adelson's claim is not

12  subject to discharge."  These two statements blink at key facts, facts that Adelson knows yet ignores

13  in order to make prove his theory.  Under *Marsch* and *Arnold*, the presence of these key facts —

14  Smith's independent need for bankruptcy relief and the contingent state of the nondischargeability

15  claim — critically cripple any effort to find bad faith.  Adelson's motion for relief from stay on Smith's

16  alleged bad faith filing is denied.

17

18

19         [19]*Marsch* dealt with dismissal of a chapter 11 case for a lack of good faith. There, the nonbusiness
    debtor had filed a chapter 11 case for the sole purpose of frustrating the entry of a state court judgment in favor
20  of an ex-spouse, a judgment that the court believed that the debtor could ultimately pay.  Even though *Marsch*
    dealt with dismissal for lack of good faith, many courts have held that the same standard applies to terminating
21  the stay for a lack of good faith.  *See, e.g.*, The Fairville Company, L.P. v. Ramkaran (*In re* Ramkaran), 315
    B.R. 361, 365-66 (D. Md. 2004).
22
           [20]Smith listed approximately $100,000 in medical bills on his schedules, and about $17,500 in common
23  consumer debt.  His unpaid legal expenses were listed at approximately $95,000.  He listed, albeit as disputed,
    Adelson's libel claim at $15 million, the amount Adelson's stated in this adversary proceeding.
24
           [21]Adelson's offer was disclosed in a letter Adelson sent to Smith's newspaper, the *Las Vegas Review
25  Journal*, on October 27, 2007.  The court initially excluded this evidence, but given that, at a minimum,  it is
    an admission of a party opponent, FED. R. EVID. 802(d)(2), the court will consider it in connection with
26  Adelson's motions.

**V. Conclusion**

Adelson's motions will be denied, and this court will retain jurisdiction of this adversary proceeding. As to the motion to lift the stay, Adelson has not met his burden of showing cause; the same infirmity dooms his motion to stay the adversary proceeding. As to whether this court or the district court should hear all future matters, this court holds that Adelson's libel claims are "personal injury tort claims" within the meaning of Section 157(b)(5) of title 28, but that the provisions of that section are not jurisdictional in that they deprive this court of the power to hear the matter.

As a result, although Adelson might at some time have been able to rely on Section 157(b)(5), he has waived the benefit of that statute by the language of his complaint, his filing a proof of claim, and his conduct in these proceedings. His request to stay the adversary proceeding is not well taken, and he fails to establish cause for relief from stay to proceed in California state court. As a result, this case will proceed to trial in December 2008 as originally scheduled, and Adelson may not continue to prosecute the California action.

This opinion constitutes the court's findings of fact and conclusions of law under FED. R. BANKR. P. 7052. Separate orders conforming with FED. R. BANKR. P. 9021 will be entered in the bankruptcy case and in the adversary proceeding.

Copies sent to:

Counsel of record via the court's ECF system

BNC MAILING MATRIX

RYAN A LOOSVELT rloosvelt@duanemorris.com, dcanderson@duanemorris.com; jldailey@duanemorris.com

RICHARD MCKNIGHT mcknightlaw@cox.net, gkopang@lawlasvegas.com; cburke@lawlasvegas.com;eseverino@lawlasvegas.com

Dominica C. Anderson
Duane Morris LLP
701 Bridger Avenue, Suite 670
Las Vegas, NV 89101

1   Kathryn M.S. Catherwood
    Duane Morris LLP
2   Suite 900
    101 West Broadway
3   San Diego, CA 92101-8285

4

5                                                # # #

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26